IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAURENZA EDWARDS,
  Petitioner,

v.          No. 4:04cv464/SPM/MD

JAMES V. CROSBY,
  Respondent.
_____

## REPORT AND RECOMMENDATION

  Before the court is an amended petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 8).  Respondent has filed a response (doc. 14) to which petitioner has replied (doc. 16).  Petitioner has also filed a motion for summary judgment (doc. 15), to which respondent has responded (doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition and the motion are without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

  Petitioner has a lengthy history with the criminal justice system and the Florida Department of Corrections (DOC).  He has been convicted and sentenced, and released on parole; he has violated parole and in the process been convicted

and sentenced for new law violations.  It is not necessary to recite this history in detail, because there are only a few operative facts that control the court's decision in this case.

Petitioner arrived in DOC custody (after his parole was violated) in February 1994 with a 22 ½ year sentence.  Pursuant to Florida law, he was given an up-front lump sum award of 2700 days of basic gain time, calculated at 10 days per month for each month of his sentence.  Since that time he has had 30 disciplinary reports, and as a result the DOC has forfeited 3145 days of gain time, including both his original lump sum and subsequent awards.  Petitioner takes the position that this is an *ex post facto* violation.  He sought relief in the state courts without success, and now brings this federal habeas petition raising that single claim.

DISCUSSION

<u>Standard of Review</u>

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neeley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and

nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a

context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

<u>Petitioner's Claim</u>

As noted earlier, petitioner contends that forfeiture of his previously awarded gain time was an *ex post facto* violation; that the DOC took something away after the fact, which violated his constitutional rights. Petitioner exhausted his grievance opportunities and sought mandamus relief in the circuit court, raising an *ex post facto* argument, among others. Relief was denied in a brief written opinion, the court holding only that it is appropriate for the DOC to forfeit lump sum gain time as discipline, citing *Singletary v. Jones*, 681 So.2d 836 (Fla. 1st DCA 1996) (holding that lump sum basic gain time is earned gain time, and can therefore be forfeited) and *Hull v. Moore*, 790 So.2d 560 (Fla. 1st DCA 2001) (same) (G at 98).[1] Petitioner then sought certiorari review in the appellate court, which denied relief "on the merits." (J at 129). Although neither state court specifically discussed the *ex post facto* claim, this court must presume that the appellate court's summary rejection of petitioner's certiorari petition on the merits was an adjudication on the merits of each claim raised therein, including the *ex post facto* claim. *Isaacs v. Head*, 300 F.3d 1232 (11th Cir. 2002) (holding that the AEDPA directs this court to treat the state court's decision as if it had ruled on the constitutional issue presented to it, even though the state court did not mention it); *Wright v. Secretary*, 278 F.3d 1245 (11th Cir. 2002) (holding that a state court's determination is entitled to AEDPA deference

---

[1]All references to the record are to doc. 14, which has lettered exhibits. The entire package of exhibits, however, is serially numbered, so reference to "G at 98" is a reference to page 98 of the exhibit package, and is one of the pages of exhibit G.

if it has rejected a claim on the merits; an explanation is not required).  Respondent concedes that the instant federal habeas petition is timely, and that petitioner has exhausted his state remedies (doc. 14, p. 5).

A. <u>Federal Review of State Court Decision</u>

Article I, § 10 of the Constitution prohibits the States from passing any "ex post facto Law."  As the Supreme Court has clearly established: "To fall within the *ex post facto* prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."  *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed. 17 (1981) and citing *Collins v. Youngblood*, 497 U.S. 37, 50 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990)).

The bulk of the Supreme Court's *ex post facto* jurisprudence has involved claims that a law has inflicted "a greater punishment, than the law annexed to the crime, when committed."  *Lynce*, 117 S.Ct. at 895.  The Court has explained that "such laws implicate the central concerns of the *Ex Post Facto* Clause:  'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'"  *Lynce*, 117 S.Ct. at 896 (quoting *Weaver v. Graham*, 450 U.S. at 30, 101 S.Ct. at 965).  Any determination whether a law inflicted "a greater punishment than the law annexed to the crime, when committed" must necessarily examine the law in effect at the time the offense occurred.  *See, e.g., Lynce*, 117 S.Ct. at 895-96 and n. 13; *Morales,* 115 S.Ct. at 1603.  The court must determine whether the legislative change "produces *a sufficient risk* of increasing the measure of punishment attached to the covered crimes."  *Morales*, 115 S.Ct. at 1603 (emphasis added).  The risk of affecting a prisoner's actual term of confinement must be more than "speculative and attenuated."  *Id.* at 1603.  The Supreme Court has made clear that the *Ex Post Facto* Clause is not implicated simply because a legislative change "might produce some remote risk of impact on a prisoner's expected term of confinement."  *Id.* at 1602-03.

B.  <u>Federal Review of State Court Decision</u>

As previously discussed, the state court denied relief on petitioner's *ex post facto* claim.  To establish an *ex post facto* violation, the first thing petitioner here must show is that there was a change in the law - that the law in existence applicable to gain time and the revocation of gain time at the time of his offense is different from the law in existence when his gain time was forfeited.  That he cannot do.  The relevant parts of Florida statutes on the subject that existed at the time petitioner committed his offenses, in 1991 and 1992, have not changed.  Fla. Stat. § 944.275(2)(a) & (3)(a) (1991), in effect when petitioner offended in 1991 and 1992, required the DOC to establish for each prisoner a "maximum sentence expiration date," which was the date upon which all imposed sentences would expire, as well as a "tentative release date," which was the maximum sentence expiration date less the up-front lump sum gain time awarded.  The statute further provided that the tentative release date could be moved back (earlier) upon the appropriate award or restoration of gain time, and moved forward (later) upon the forfeiture of gain time.  Fla. Stat. § 944.28(2)(a) (1991), in effect when petitioner offended, provided generally for the forfeiture of gain time for various disciplinary infractions and crimes.  Thus, these two statutes read together established a system of rewards for what is commonly called good behavior, and punishments for the lack thereof.  The current versions of these two statutes, §§ 944.274 and 944.28 (2004) are identical in all material respects to those in force, and applied, when petitioner  offended.

It should be noted that over the last three decades the Florida Legislature has passed several laws that attempted to address prison overcrowding.  These laws set up different methods of awarding "provisional gain time" and "control release credits."  Those laws spawned a multitude of litigation. *See, e.g., Lynce v. Mathis*, *supra* (holding that provisional gain time credits awarded under prison overcrowding plan could not be cancelled by a change in the law, because prisoner is entitled to benefits of plan that existed when he offended); *Thomas v. Singletary*, 729 So.2d 369 (Fla. 1998) (holding that prisoners had not shown *ex post facto* violation where the law had a built in mechanism for awarding and revoking control

release credits, thereby giving them notice at the time of their offense that the credits might be revoked); *Gomez v. Singletary*. 733 So.2d 499 (Fla. 1998) (holding that prisoners were entitled to restoration of credits pursuant to *Lynce, supra,* because there had been a change in the law that adversely affected them).

None of the prison overcrowding laws relate to this petitioner.  He was awarded gain time as the law provided when he offended, and he forfeited gaintime under the same laws.  Thus, regardless of how he casts his argument, petitioner cannot show that there was a change in the law that operated to his detriment; he cannot show that "the legislature increase[d] punishment beyond what was prescribed when the crime was consummated."  *Lynce*, 117 S.Ct. at 896.  He therefore cannot show an *ex post facto* violation.

Petitioner relies on *Knuck v. Wainwright*, 759 F.2d 856 (11th Cir. 1985).  In that case the state changed the method it used to calculate gain time.  The court found that this was the functional equivalent of a change in the law.  The law in effect at the time of defendant's crimes was ambiguous on the method of calculating gain time, and the legislature amended the statute to clarify how the calculation should be made.  The DOC then changed its method of determining when gain time would be awarded.  Defendant had originally been awarded gain time based on his sentence, but under the new method his gain time was awarded based on the time actually served.  Thus, although the defendant would be entitled to the same *overall* amount of gain time under both the original and the revised methods, the amendment had the effect of reducing what he was originally awarded because it changed the *schedule* upon which those amounts would be awarded.[2]   Since after the recalculation the defendant had less gain time than he had before (although with good behavior he could have it awarded in the future), he suffered a detriment.  This, the court held, was an *ex post facto* violation.  That is not the situation here. Petitioner was awarded his lump sum gain time, which, in the event of misbehavior, was forfeitable according to the law in force at the time it was awarded.  He

---

[2]The lump sum method of calculation was later reinstated, and was in effect when petitioner offended.

misbehaved, and his gain time was forfeited.  There was no change in the law, nor was there a change in the method of calculating the award or forfeiture of gain time.  There was no *ex post facto* violation.

The true thrust of petitioner's argument is that his interpretation of Florida law is different from that of the DOC.  In essence, he argues that when he was awarded 2700 days of gain time upon his February 1992 arrival in DOC custody, those days in effect became vested and could not be taken from him.  He argues that only "earned" gain time credits awarded in addition to the lump sum credits could be forfeited.  It is true that if the appropriate statute had made the lump sum gain time non-forfeitable at the time petitioner offended, but was later changed, petitioner's argument would have force.  But that is not what happened.  This case is simply a matter of the interpretation of state law.

How the DOC and the state courts interpret state law is not this court's concern, and a federal habeas court cannot grant relief on the basis of petitioner's assertion that his 2700 days of gain time were allegedly vested and not subject to forfeiture.  Federal habeas relief is available to correct only constitutional injury.  28 U. S. C. §  2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance.  [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*).  "This limitation on federal habeas review is of equal force when

a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). In *Branan v. Booth*, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508  (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980)).

## CONCLUSION

Here petitioner raises an *ex post facto* violation, but as shown above, there is none.  Thus, the state court's denial of relief did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  To the extent petitioner argues that the DOC and the Florida courts have erroneously interpreted Florida law, such claim provides no basis for federal habeas relief.

Accordingly, it is respectfully RECOMMENDED that the amended petition for writ of habeas corpus (doc. 8), challenging the forfeiture of petitioner's gain time, be DENIED, that petitioner's motion for summary judgment (doc. 15) be DENIED, and that this cause be DISMISSED and the clerk be directed to close the file.

At Pensacola, Florida this 28th day of November, 2005.


/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).